IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In the Matter of the Complaint of Spirit Cruises, LLC as Owner of the M/V SPIRIT OF BALTIMORE for Exoneration from or Limitation of Liability | Civil Action No. ELH-16-4097 |

**MEMORANDUM**

On December 29, 2016, Spirit Cruises, LLC ("Spirit"), the owner of the M/V SPIRIT OF BALTIMORE (the "Vessel"), filed its "Verified Complaint For Exoneration From Or Limitation Of Liability", pursuant to the Limitation of Liability Act of 1851, *as amended*, 46 U.S.C. §§ 30501, *et seq.*[1] ECF 1.[2] The M/V SPIRIT OF BALTIMORE is a 119-foot passenger vessel (*id.* ¶ 3), which plaintiff estimates to have a current value of $1.85 million. *Id.* ¶ 15; *see* ECF 1-2 (Condition and Valuation Survey) at 13.

The Complaint arises out of the events during the early morning hours of August 28, 2016, when the Vessel was under charter and "allided with a floating dock located at Henderson's Wharf in the Fells Point area of Baltimore City." *Id.* ¶¶ 5-6. According to the Complaint, the Vessel was traveling at approximately three knots at the time of the incident. *Id.* ¶ 7.

After Spirit filed suit, the Court issued an Order enjoining the commencement or further prosecution of actions and proceedings against plaintiff in connection with the voyage of the

---

[1] The Limitation of Liability Act is sometimes referred to as the "Shipowner's Limitation of Liability Act." *See, e.g.*, *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 447 (4th Cir. 1999).

[2] Jurisdiction is based on 28 U.S.C. § 1333, which provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Vessel on August 28, 2016. ECF 3, ¶ 6. The Court set the limitation fund at $1,850,000. *Id.*, ¶ 1. Furthermore, the Court instructed the Clerk to issue a notice to potential claimants, consistent with Fed. R. Civ. P. Supp. R. F(4) (*id.* ¶ 5; *see* ECF 4 (notice)), and directed that the notice be published in the Baltimore Sun, a daily newspaper, once per week for four weeks. ECF 3, ¶ 7. The notice provided information to potential claimants concerning the filing of claims, and set a deadline of February 15, 2017, for the filing of claims. *See* ECF 4.

Thereafter, twenty-eight people filed claims (collectively, "Claimants") with the Court, seeking an aggregate of more than $2.8 million. *See* docket; ECF 49; *see also* ECF 43-1 at 2. Seventeen Claimants filed a demand for jury trial or otherwise pleaded such a request. *See, e.g.*, ECF 8; *see also* ECF 43-1 at 3, n. 2 (collecting jury demands). Some of the Claimants also counterclaimed. *See, e.g.*, ECF 11.

Spirit then filed a motion to strike the Claimants' jury demands (ECF 43), along with a memorandum of law. ECF 43-1 (collectively, "Motion"). Spirit argues that the Claimants "do not have the ability to request a jury trial in this proceeding . . . ." ECF 43 at 2. The Claimants filed a consolidated opposition to the Motion (ECF 59) ("Opposition") and Spirit replied. ECF 65 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion and strike Claimants' jury demands.

## I.     The Limitation of Liability Act

The Limitation of Liability Act finds its origin in a 1734 act of the Parliament of Great Britain, which "relieved shipowners from liability for acts of their master and crew done without the 'privy or knowledge' of the owner, to the extent of the value of the ship, its equipment, and the freight to be earned on its particular voyage." Thomas J. Schoenbaum, *Admiralty and*

*Maritime Law*, § 15-1 (5th ed.) ("Schoenbaum"). As observed by Chief Justice Taft in *Hartford Acc. & Indem. Co. of Hartford v. Southern Pac. Co.*, 273 U.S. 207, 214 (1927):

> [T]he great object of the statute was to encourage shipbuilding and to induce the investment of money in this branch of industry by limiting the venture of those who build the ships to the loss of the ship itself or her freight then pending, in cases of damage or wrong happening, without the privity, or knowledge of the shipowner, and by the fault or neglect of the master or other persons on board . . . .

And, as stated more recently by the Fourth Circuit in *Norfolk Dredging Co v. Wiley*, 439 F.3d 205, 209 (4th Cir. 2006): "Congress passed the Limitation of Liability Act 'to assist shipowners by placing them in parity with European (and particularly English) shipowners who had long enjoyed the benefits of limiting their liability for marine disasters.'" (Quoting *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 448 (4th Cir. 1999)).

Section 30505 of Tile 46 of the U.S. Code is titled "General limit of liability." It provides:

> **(a) In general.**–Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.
>
> **(b) Claims subject to limitation.**–Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.
>
> **(c) Wages.**–Subsection (a) does not apply to a claim for wages.

Notably, under the Limitation of Liability Act, "the fund against which the claimants must make their claim is equal to the value of the ship *after* the voyage on which the incident occurred." *Pickle*, 174 F.3d at 449 (citing *Norwich & N.Y. Transp. Co. v. Wright*, 13 Wall. (80

U.S.) 104, 123 (1871)) (emphasis added). "'Thus if the ship is lost, the value is zero; if a few strippings from the wreck and a life boat or two are saved, those may be solemnly handed over to a trustee or their value ascertained and a bond posted.'" *Pickle*, 174 F.3d at 449 (quoting G. Gilmore and C. Black, *The Law of Admiralty*, § 10-29 at 907 (2d ed. 1975) ("Gilmore and Black")).

The procedure for exoneration from and limitation of liability actions is governed by statute and by Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Within six months of a receipt of a claim in writing, any vessel owner may file a complaint for exoneration from or limitation of liability in an appropriate district court. *See* 46 U.S.C. § 30511(a); Rule F(1) and (2). When the action is brought, the owner must deposit with the Court "an amount equal to the value of the owner's interest in the vessel and pending freight, or approved security." 46 U.S.C. § 30511(b)(1); *see* Rule F(1). After the action has been brought and the owner has complied with the applicable rules, "all claims and proceedings against the owner related to the matter in question shall cease." 46 U.S.C. § 30511(c); *see* Rule F(3). The court then issues a notice to all persons asserting claims. Rule F(4).

After all claimants have been notified, "the court conducts a proceeding known as a 'concursus,' in which the court, **without a jury**, tries all issues related to the limitation proceedings." *In re Complaint of Salty Sons Sports Fishing, Inc.*, 191 F. Supp. 2d 631, 633–34 (D. Md. 2002) (emphasis added); *see also Pickle*, 174 F.3d at 449 ("The proceeding is conducted before a court in admiralty without a jury . . . [and] all claims are marshaled and brought into one action—establishing a '*concursus*' of all claims . . . ."). In *Maryland Cas. Co. v. Cushing*, 347 U.S. 409 (1954), Justice Frankfurter, writing for a plurality of the Court, explained, *id.* at 417:

> [I]t is important to bear in mind that the *concursus* is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules are designed to protect injured claimants. They ensure that all claimants, not just a favored few, will come in on an equal footing to obtain a pro rata share of their damages. To permit direct actions to drain away part or all of the insurance proceeds prejudices the rights of those victims who rely, and have every reason to rely, on the limitation proceeding to present their claims.

In the *concursus*, "the Court determines 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if the limitation is granted, how the [limitation] fund should be distributed.'" *In re Complaint of Salty Sons Sports Fishing, Inc.*, 191 F. Supp. 2d at 634 (quoting *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir. 1979) (alteration in *Salty Sons Sports Fishing*). If a shipowner fails to establish a right under the Limitation of Liability Act and the limitation is denied, "the claimants are released to pursue their original claims in full", which they can do either through a continuation of the limitation proceeding, in admiralty, or in their original forums. *Pickle*, 174 F.3d at 449; *see also Wheeler v. Marine Navigation Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985) ("Each circuit that has considered this question has ruled that once limitation is denied, plaintiffs should be permitted to elect whether to remain in the limitation proceeding or to revive their original claims in their original fora."); *Fecht v. Makowski*, 406 F.2d 721, 723 n.7 (5th Cir. 1969) ("Since the admiralty court has the power to grant full relief even though limitation is denied, one or more of the damage claimants may choose to litigate liability in admiralty.").

Notably, "[f]ederal courts have exclusive admiralty jurisdiction to determine whether a vessel owner is entitled to limited liability." *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998); *see also Ex parte Green*, 286 U.S. 437, 439-40 (1932) ("It is clear from our opinion that the state court has no jurisdiction to determine the question of the owner's right to a limited

liability . . . ."); *Langnes v. Green*, 282 U.S. 531, 540 (1931); *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996) ("Federal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability.").

But, this exclusive jurisdiction creates a tension between the Limitation of Liability Act and the "saving to suitors" clause of the admiralty jurisdiction statute, 28 U.S.C. § 1333(1), which "was designed to protect remedies available at common law." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001) (citing *The Hine v. Trevor*, 4 Wall. (71 U.S.) 555 (1866)). In other words, "the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Lewis*, 531 U.S. at 445.

The *Lewis* Court observed, 531 U.S. at 448: "Some tension exists between the saving to suitors clause and the Limitation Act [because one] statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." As stated in *In re Lyon Shipyard*, 91 F. Supp. 3d 832, 839 (E.D.V.A. 2015): "The tension between the savings to suitors clause and the Limitation of Liability Act is apparent, because one gives plaintiffs the right to choose their remedy, including, as here, a suit in state court, while the other allows a shipowner to avail itself of the federal courts to limit liability."

In resolving this tension, the Supreme Court has carved out two exceptions to the federal courts' exclusive admiralty jurisdiction to resolve actions under the Limitation of Liability Act. Gilmore and Black, § 10-18 at 864. The first exception is "where there is only a single claimant." *Lewis*, 531 U.S. at 451; *accord Ex Parte Green*, 286 U.S. at 438-440; *Langnes*, 282 U.S. at 540-544; *Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 831 (7th Cir. 1996); *Vatican Shrimp Co. v. Solis*, 820 F.2d 674, 677 (5th Cir. 1987). And, the second exception is "where the total claims do not exceed the value of the limitation fund."

*Lewis*, 531 U.S. at 451; *accord Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152, (1957); *Gorman v. Cerasia*, 2 F.3d 519, 524 (3d Cir. 1993); *In re Midland Enters., Inc.*, 886 F.2d 812, 814 (6th Cir.1989); *Complaint of Mohawk Assocs. & Furlough, Inc.*, 897 F. Supp. 906, 910 (D. Md. 1995). If either of the two exceptions applies, the district judge will lift the injunction on other actions, and the claimants can proceed in the forum of their choosing. Gilmore and Black, § 10-18 at 864; *see Lewis*, 561 U.S. at 454; *In re Lyon Shipyard*, 91 F. Supp. 3d at 838-39.

## II.     Discussion

In its Motion to Strike, Spirit argues that the Claimants are not entitled to a jury trial for the limitation proceeding. ECF 43-1 at 9. Citing *Pickle*, 174 F.3d 444, Spirit contends that neither of the two exceptions to the Court's exclusive admiralty jurisdiction applies. ECF 43-1 at 9. In particular, Spirit points out that there is more than one claimant and the total of the claims exceeds the limitation fund amount of $1,850,000. *Id.* Therefore, Spirit argues that its filing of this action mandated "that any actions other than the limitation proceeding must 'cease' immediately and that any potential claimants would be required to file their claims, pursuant to Supplemental Admiralty Rule F(5), in the limitation proceeding where 'the court, sitting without a jury, adjudicates the claims.'" *Id.* (quoting *Lewis*, 531 U.S. at 448).

In their Opposition, the Claimants argue: "Dismissal of Claimants' demands for jury trial in this matter are premature because many facts remain yet to be discovered, both through the discovery process in this litigation and based on the Coast Guard's yet to be completed investigation.[]" ECF 59 at 6. According to the Claimants, the facts learned during discovery will effectively allow the Claimants to determine whether Spirit is entitled to exoneration from or limitation of liability. *Id.* at 6-7.

Furthermore, Claimants contend that it is premature to dismiss their demands for jury trial because the Court also has diversity jurisdiction over the case. *Id.* at 7. According to Claimants, "[e]ven if the limitation action is dismissed, this court would continue to have jurisdiction to adjudicate the claims, applying substantive maritime law." *Id.* Claimants contend that in that situation, "under the savings to suitors clause, Claimants' right to a jury trial would be preserved." *Id.*

Finally, Claimants assert that a right to jury trial can be preserved even in the limitation of liability action. *Id.* They point out that this result could be reached through stipulations including: "(1) stipulations that the value of all of the claims are less than the purported *ad interim* stipulation of value of the Vessel;[] and (2) stipulations that suffice to eliminate the multiple-claims-inadequate-fund situation that Petitioners assert exists in this case." *Id.* at 7-8. In view of these potential stipulations, Claimants state that "it would be premature to strike now the jury demands by Claimants . . . ." *Id.* at 8.

In its Reply, Spirit reasserts its view that there is no right to trial by jury in this limitation action. *See* ECF 65 at 1-5. Spirit argues: "[T]he Supreme Court has articulated two exceptions that would permit a claimant to obtain a jury trial despite a pending limitation proceeding. Neither of those two exceptions currently applies in this case." ECF 65 at 5. And, Spirit contends that the existence of complete diversity is of no consequence with respect to the availability of a jury in a limitation action. *Id.* at 6-7.

The arguments of counsel here are tantamount to the proverbial ships passing in the night. As far as I can tell, despite their adverse positions, counsel appear to be in near-complete agreement as to many aspects of the case.

As an initial matter, counsel for both sides seem to agree that there is generally no right to trial by jury on the question of exoneration from or limitation of liability under the Limitation of Liability Act. *See* ECF 43-1 at 4-6; ECF 59 at 5. Moreover, both sides agree that the Supreme Court has recognized two exceptions, discussed earlier, in which the district court can dissolve the injunction against state or federal court proceedings during the pendency of the limitation action, and that neither of those two exceptions *presently* applies. ECF 43-1 at 6; ECF 59 at 7-8. And, although the parties disagree as to the applicability of the Limitation of Liability Act, there appears to be little disagreement as to the right of the Claimants to proceed by way of a jury, in one way or another, should the Court determine that the Limitation of Liability does not apply here. ECF 43-1 at 8 (quoting *Pickle*, 174 F.3d at 450); ECF 59 at 7.

The Fourth Circuit's opinion in *Pickle*, 174 F.3d 444, provides guidance as to the fate of the Claimants' jury trial demands. Roy Pickle and Jonathan Williams, Jr. were crewmen aboard the F/V CHAR-LEE II, a fishing vessel owned by Char Lee Seafood, Inc ("Char Lee"). *Id.* at 446. In 1997, Pickle, Williams, and Jesse Dempsey, the captain, were fishing approximately thirty miles southeast of Cape Lookout, North Carolina, when "gale-force winds and rough seas erupted." *Id.* "[T]he *F/V Char–Lee II* never returned" and "was presumed to have sunk between April 1 and April 4, 1997 . . . ." *Id.* at 447.

Thereafter, the estates and families of Pickle and Williams filed separate actions in admiralty against, *inter alia*, Char Lee, alleging "negligence under the Jones Act, negligence and unseaworthiness under general maritime law, negligence and unseaworthiness under the Death on the High Seas Act, and wrongful death under North Carolina law." *Id.* Char Lee filed a separate action in the district court invoking the Limitation of Liability Act. *Id.* The district court, *sua sponte*, entered an order consolidating for trial the two individual actions with the

limitation of liability action. *Id.* Thereafter, Char Lee noted an interlocutory appeal, arguing that the district court's consolidation of the individual actions with the limitation of liability action "compromises the exclusivity of its limitation-of-liability action provided for by the Shipowner's Limitation of Liability Act." *Id.* at 449.

Among other things, the Fourth Circuit confronted the effect of the consolidation on the right to a jury trial under the Jones Act. *Id.* at 450. The Court explained, *id.* (emphasis added):

> [I]nsofar as claimants proceed in a limitation-of-liability action, **they are not entitled to a trial by jury**, even if the basis of their claim for fault is made under the Jones Act. But if the limitation-of-liability is denied, then the claimants may elect to proceed with their original actions before any jury authorized and demanded in those actions.

The Court also said that, if the district court ultimately denied the limitation of liability, "'the claimants may elect to pursue their claims to judgment in the admiralty court or pursue their rights under the Jones Act.'" *Id.* at 451 (quoting *In re Wood*, 230 F.2d 197, 199 (2d Cir. 1956)).

Ultimately, the Fourth Circuit remanded the case to the district court with instructions to sever the limitation of liability action. *Id.* And, the Court further directed, *id.*: "In the event that the limitation of liability is denied, the [district] court should lift the stay and provide the claimants a choice to pursue their claims in the limitation-of-liability action or to revive their original actions wherein they have demanded trials by jury."[3]

I agree with Spirit that there is no right to a jury in the limitation of liability proceeding with respect to the issue of the application of the Limitation of Liability Act. *See* ECF 65 at 6; *see also Pickle*, 174 F.3d at 449. In the event that the Claimants are able to satisfy either of the two exceptions recognized by the Supreme Court, the Court will lift the stay and Claimants will be permitted to pursue a jury trial in a separate proceeding in the forum of their choosing.

---

[3] The "stay" referred to by the *Pickle* Court was the injunction entered by the district court in the limitation of liability action against the initiation and prosecution of related cases. *See Pickle*, 174 F.3d at 448; Rule F(3).

Similarly, if Claimants prevail on the limitation of liability action, they will be permitted to elect to continue in that proceeding in admiralty or to file suit in state or federal court. But, at this time, Claimants do not have a right to proceed by way of a jury trial as to the applicability of the Limitation of Liability Act.

### III. Conclusion

In sum, I shall GRANT the Motion insofar as Claimants seek to proceed by way of a jury in the limitation action on the issue of exoneration from or limitation of liability. However, the Motion is granted without prejudice to Claimants' rights to renew their requests for trial by jury in the event that future proceedings would permit a jury trial.

Date: May 25, 2017

/s/
Ellen Lipton Hollander
United States District Judge